UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:26-MJ-03595-LETT

FILED BY KAN D.C.
Sep 4, 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

IN RE SEALED CRIMINAL
COMPLAINT
_______________________________/

**CRIMINAL COVER SHEET**

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? No

2. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

3. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No

4. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No

5. Did this matter involve the participation of or consultation with Magistrate Judge Yeney Hernandez during her tenure at the U.S. Attorney's Office, which concluded on April 2, 2026? No

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By: */s/ Brian Dobbins*
Brian Dobbins
Assistant United States Attorney
Court ID No. A5501182
99 N.E. 4th Street
Miami, FL 33132
(305) 961-9304
Brian.Dobbins@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

United States of America
v.

BIDJAIKOEMAR NANHOE,
a/k/a "Jerry Nanhoe,"

*Defendant(s)*

Case No. 1:26-MJ-03595-LETT

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of August 27,2026 in the county of Miami-Dade in the Southern District of Florida, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 554 | Smuggling goods from the United States; |
| 18 U.S.C. § 922(e) | Delivery of firearms to a common carrier without notice; and |
| 18 U.S.C. § 933(a)(3) | Trafficking in Firearms. |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

9907

*Complainant's signature*

Jason Carmona, Special Agent, HSI

*Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by Telephone

Date: September 4, 2026

Enjoliqué A Lett

*Judge's signature*

City and state: Miami, Florida

Hon. Enjoliqué A. Lett, United States Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jason Carmona, being first duly sworn, hereby depose and state the following:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Department of Homeland Security Investigations ("HSI") and have worked in this capacity since March of 2021. I am currently assigned to the Miami International Airport ("MIA") Air Cargo Border Enforcement Security Task Force ("BEST") within the Miami Field Office. In the course of my official duties, I have participated in and conducted numerous international and domestic criminal investigations for multiple violations of federal and state laws including but not limited to smuggling of narcotics, firearms, bulk cash, crimes involving fraud, sexual exploitation of minors, and other organized criminal activity.

2. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code; that is, I am empowered by law to conduct investigations and make arrests for offenses enumerated in Titles 8, 18, 19, 21, and 31 of the United States Code, including Title 18 USC Sections 554, 922, and 933.

3. This Affidavit is submitted in support of a complaint for the arrest of Bidjaikoemar NANHOE ("NANHOE") for violations related to Title 18, United States Code, Section 554 (smuggling goods from the US); Title 18, United States Code, Section 922(e) (delivery of firearms to a common carrier without notice), and Title 18, United States Code, Section 933(a)(3) (trafficking firearms).

4. The information in this Affidavit is based upon your Affiant's personal participation in the investigation set forth below, and personal knowledge and information from other law enforcement officers and agencies involved in the investigation, and from my review of

records, reports, witness statements, and evidence obtained during this investigation. This Affidavit does not represent every fact known to law enforcement about the investigation and is submitted for the limited purpose of establishing probable cause in support of the attached criminal complaint.

**PROBABLE CAUSE**

5. On or about August 25, 2026, HSI Miami Special Agents assigned to the Miami International Airport Air Cargo BEST, with Special Agents of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and Miami Beach Police Department ("MBPD") detectives, conducted surveillance on NANHOE after he arrived at the Miami International Airport aboard Surinam Airways flight 421.

6. At approximately 4:45 PM, law enforcement observed NANHOE exit the airport, walk to the Dolphin parking garage, and enter the driver's seat of a black Chrysler Pacifica, bearing Florida license plate 58FDAW (the "Crysler Pacifica"). NANHOE proceeded to drive northbound into Broward County and arrived at a Publix supermarket located in Weston, Florida. After a short period of time, NANHOE parked his van alongside a gray Saturn sedan, bearing Florida license plate 47BEJP (the "Saturn sedan"). The Saturn was occupied by another individual (hereinafter referred to as "Individual 1"). At this time, Individual 1 proceeded to briefly open the trunk of his vehicle as if to show NANHOE the contents inside. After several minutes, NANHOE and Individual 1 then drove separately to a nearby storage unit. After about thirty (30) minutes at the storage unit, NANHOE and Individual 1 proceeded to a nearby hotel in Sunrise, Florida. Once at the hotel, law enforcement concluded surveillance.

7. On or about August 27, 2026, at approximately 3:00 AM, law enforcement re-established surveillance of the Chrysler Pacifica van and the Saturn sedan at the hotel in Sunrise,

Florida. At approximately 8:35 AM, law enforcement observed NANHOE and Individual 1 enter the Chrysler Pacifica and proceed southbound to Miami. At approximately 9:30 AM, NANHOE and Individual 1 arrived at Seven Winds Shipping located at 8160 NW 71st Street, Miami, Florida 33166. Seven Winds Shipping is a freight forwarder or international shipping business. Law enforcement then observed NANHOE and Individual 1 unload approximately seven (7) pieces of cargo from the Chrysler Pacifica van, including black plastic storage bins with yellow and red lids, two (2) coolers, and a large brown cardboard box. At approximately 10:25 AM, NANHOE and Individual 1 exited Seven Winds Shipping and drove north towards Broward County. Law enforcement remained at Seven Winds Shipping and did not observe any material change to the cargo.

8. At approximately 11:30 AM, NANHOE and Individual 1 arrived at their hotel in Sunrise, Florida. Both subjects exited the Chrysler Pacifica van and went inside their hotel. After approximately thirty (30) minutes, NANHOE exited alone and drove the Chrysler Pacifica van northbound through Broward County before arriving at PJ Armory, a gun store, located at 4661 Johnson Road #8, Coconut Creek, Florida. At approximately 1:00 PM, NANHOE entered PJ Armory and proceeded to purchase a large amount of ammunition and ammunition canisters. Law enforcement observed NANHOE purchase the ammunition and canisters inside the store and observed NANHOE place the ammunition and canisters inside the Chrysler Pacifica. NANHOE then proceeded south towards a Home Depot located near Weston, Florida. During this time, law enforcement continued surveillance of NANHOE and observed no material change to the Chrysler Pacifica.

9. At approximately 1:45 PM, law enforcement observed NANHOE arrive at a Home

Depot located in Davie, Florida. NANHOE proceeded to enter the store and purchase several tools, including a large green box containing a Ryobi leaf blower. While NANHOE was inside the store, a law enforcement officer was able to walk by NANHOE's Chrysler Pacifica and observed several ammunition canisters in the rear passenger area of the vehicle. At approximately 2:25 PM, NANHOE paid for his items and exited the Home Depot store. At this time, NANHOE entered the Chrysler Pacifica and proceeded to head south towards Seven Winds Shipping.

10. At approximately 3:00 PM, law enforcement observed NANHOE again arrive at Seven Winds Shipping. NANHOE proceeded to place the dark green ammunition cannisters inside the white coolers. Law enforcement also observed NANHOE place the ammunition canisters purchased from PJ Armory into the white coolers that he and Individual 1 had previously delivered. At approximately 3:20 PM, NANHOE exited Seven Winds Shipping and proceeded northbound to Broward County.

11. At approximately 3:30 PM, your Affiant received consent from the Seven Winds Shipping owner and manager to conduct a consensual border search of the cargo associated with NANHOE, recorded under Seven Winds Shipping warehouse receipt number 172605 for seven (7) pieces of cargo. The manager of Seven Winds Shipping stated the cargo belonged to "Jerry Nanhoe" and was destined to Suriname. On the "Shipper Security Endorsement" form and Declarations page is the following statement:

> "I have read and understand the following information. This shipment does not contain any unauthorized explosives, destructive devices or hazardous materials. I also consent to a random screening, x-ray and search of this shipment. I am aware that this endorsement and original signature will be retained on file for at least 30 days among other shipping

documents."

NANHOE indicated he agreed to the above statement by circling "yes" on the Shipper Security Endorsement form and signed as the shipper. NANHOE provided the description of the cargo as seven (7) pieces "General Cargo 4 HDX Box, 2 Cooler, 1 Chair." Moreover, NANHOE indicated the name or company delivering cargo was "Nanhoe Enterprise," and the name or company receiving cargo was "Nanhoe Enterprise." Shipping details for the Seven Winds Shipping Warehouse Receipt 172605 included the Shipper was listed as "Jerry Nanhoe," and the Consignee was listed as "Nanhoe Enterprise."

12. Upon inspection, your Affiant discovered NANHOE's cargo included two large white coolers, four black plastic bins (three with yellow lids and one with a red lid), and a large brown cardboard box for an armchair all on a pallet. Within one of the white coolers, your Affiant observed the Ryobi leaf blower on top of the dark green ammunition canister and various boxes of ammunition within the ammunition cannister. Within one of the black plastic storage bins with a yellow top your Affiant discovered various pistols underneath a lead plate. Within a second black plastic storage bin container with a yellow top, your Affiant observed a rifle within a bag underneath a lead plate. Within the black container with a red top, your Affiant observed various weapon parts comingled with other merchandise such as a hair dryer.

13. Due to your Affiant's law enforcement training and experience, it is known that entities involved in trafficking and smuggling firearms will use lead sheets or pieces of metal as well as appliances and metal tools to conceal the contraband and evade law enforcement detection.

14. Customs Border Protection ("CBP") Miami Seaport Contraband Enforcement Team ("CET") was contacted. CET detained Warehouse Receipt 172605, which were seven (7)

pieces, for further inspection. During the inspection, nine (9) rifles, six (6) pistols, eighteen (18) polymer eighty-percent Armalite Rifle type lower receivers, fourteen (14) complete Armalite Rifle type upper receivers,[1] 5,140 rounds of ammunition, fifty-nine (59) magazines, and other miscellaneous gun parts were discovered commingled with personal effects inside the bins. None of the firearms, ammunition, or firearm parts were listed or declared in the description of the cargo to be shipped, and NANHOE's declaration was clearly false.

## CONCLUSION

15. Wherefore, your Affiant submits that there is probable cause NANHOE violated Title 18, United States Code, Sections 554 (smuggling goods from the United States), 922(e) (delivery of firearms to a common carrier without notice), and 933(a)(3) (trafficking firearms).

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

9907

JASON CARMONA
SPECIAL AGENT
HOMELAND SECURITY INVESTIGATIONS

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P.4.1 by Telephone this 4th day of September 2026.

Enjoliqué A Lett

HONORABLE ENJOLIQUÉ A. LETT
UNITED STATES MAGISTRATE JUDGE

[1] A Polymer 80 Lower Receiver is an 80% lower receiver made of polymer is an unfinished firearm receiver component manufactured from a durable synthetic material. In its unfinished state, it lacks certain cavities, holes, or features required for assembly and function. It resembles the lower receiver portion of a firearm but is not fully machined or completed and is not serialized like a normal lower receiver would be.
The upper receiver is the top section of a firearm's receiver assembly. It typically contains the chamber and barrel attachment point and provides housing or support for the firearm's operating components, such as the bolt assembly, charging handle, and ejection port.